**Francisco FRANCO, Plaintiff–Appellant,**

**v.**

**Walter KELLY, Lt. Moscicki and Officer Higley, Defendants–Appellees.**

**No. 1073, Docket 88–2035.**

United States Court of Appeals, Second Circuit.

Argued April 22, 1988.

Decided July 25, 1988.

David Gerald Jay, Buffalo, N.Y., for plaintiff-appellant.

John Q. Driscoll, Asst. Atty. Gen., State of N.Y., Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen., William J. Kogan, Asst. Sol. Gen., Albany, N.Y., of counsel), for defendants-appellees.

Before TIMBERS, MESKILL and KEARSE, Circuit Judges.

MESKILL, Circuit Judge:

In this appeal, we must decide whether an allegation that state prison officials intentionally filed false disciplinary charges against an inmate, in retaliation for the prisoner's exercise of a constitutional right, states a cause of action for damages under 42 U.S.C. § 1983 (1982) that can withstand a motion for summary judgment. The United States District Court for the Western District of New York, Curtin, C.J., held that as long as prison officials provide minimum procedural due process protections, which were provided here, the alleged filing of false disciplinary charges would not raise a proper section 1983 claim. For the following reasons, we reverse and remand to the district court for further proceedings.

## BACKGROUND

In 1984 and 1985, the time period at issue in this case, plaintiff-appellant Francisco Franco was an inmate at the Attica Correctional Facility in New York State. On January 9, 1985, Franco was cited in an inmate misbehavior report filed by defendant-appellee Laurence J. Higley, a corrections officer. In the report, Higley alleged that Franco had directed obscene remarks and gestures toward him while Higley was overseeing the transfer of a group of inmates from one area of the prison to another. Higley said that when he approached Franco "to counsel him on his behavior," Franco responded by saying, "If your [sic] going to write me up for this you had better make it good, because I'll get you good for it." Higley cited Franco for violations of prison rules that prohibit insolence and threats by inmates toward prison employees.

Higley's charges were the subject of a subsequent disciplinary hearing held before defendant-appellee Ronald Moscicki, a hearing officer. At that hearing, held in January 1985, Franco called several inmates and another corrections officer as witnesses. All of those witnesses, who were present in the area at the time of the alleged incident, testified that they had not heard or seen anything to support Higley's allegations. Higley testified in support of his complaint. In a subsequent report, Moscicki found Franco guilty of insolence and threats and sentenced him to thirty days of confinement and a loss of privileges. Franco's administrative appeals were unsuccessful and he served his time in confinement.

Franco thereafter initiated an action in a New York state court pursuant to Article 78 of the New York Civil Practice Law and Rules, seeking expunction of the disciplinary report and proceedings from his prison files. After a hearing, the state Supreme Court for Wyoming County entered judgment for Franco, ordering, without opinion, that the proceedings be "nullified and expunged." That ruling was affirmed, without opinion, by the Appellate Division of the Supreme Court. *See Franco v. Kelly*, 115 A.D.2d 1016, 497 N.Y.S.2d 974 (4th Dep't 1985).

Franco then instituted the instant action in the district court. His initial complaint was filed *pro se* and Chief Judge Curtin subsequently appointed counsel. In his complaint, Franco alleged that Higley's

January 1985 disciplinary report was part of a pattern of false disciplinary actions taken against him in retaliation for his cooperation with an investigation by the state Inspector General into reported incidents of inmate abuse at the Attica Correctional Facility. Franco alleged that in late 1984 he cooperated with the Inspector General's investigation of the alleged beating of inmate Stanley Washington by prison guards. Franco said that he subsequently had been subjected to "trumped up" disciplinary charges, resulting in confinement and a loss of privileges, and that he had suffered physical abuse and threats by prison guards. Franco alleged that he had been deprived of unspecified constitutional rights, in violation of 42 U.S.C. § 1983, and he sought $200,000 in compensatory and punitive damages. With his complaint, Franco filed copies of letters he had written in late 1984 to the Inspector General's office and in January 1985 to defendant-appellee Walter R. Kelly, the Attica superintendent. Both letters complained of alleged incidents of retaliatory abuse against Franco.

The defendants moved for summary judgment. Franco, in turn, sought partial summary judgment against Officer Higley, arguing that the state court's previous expunction of his disciplinary record should collaterally estop Higley from relitigating his liability for filing false charges. Chief Judge Curtin, by order dated April 20, 1987, ordered prison officials to file an affidavit responding to Franco's allegation that the disciplinary proceedings had been instituted in retaliation for his cooperation with a state investigation of reports of inmate abuse. In response, Higley filed an affidavit in which he denied having any knowledge of the reported abuse of inmate Washington or of any subsequent investigation of that incident by the state Inspector General.

In an opinion dated December 31, 1987, Chief Judge Curtin denied Franco's motion for partial summary judgment and granted defendants' motion for summary judgment in all respects. As to Franco's motion, Chief Judge Curtin held that an Article 78 proceeding resulting in the expunction of disciplinary records would have no preclusive effect in a subsequent action for damages under section 1983.[1] As to the defendants' motion, Chief Judge Curtin held that as long as Franco had the benefit of minimum procedural due process protections, his action for damages resulting from the alleged filing of false charges must fail. In support of this proposition, Chief Judge Curtin relied on our decision in *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986), *rehearing in banc denied*, 826 F.2d 194 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). Next, relying on the Supreme Court's decisions in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), Chief Judge Curtin concluded that Franco had indeed been provided with all of the procedural protections to which he was constitutionally entitled. Accordingly, Chief Judge Curtin granted summary judgment for the defendants.[2] He noted, however, that under his reading of *Freeman*, the mere provision of procedural due process could eliminate all liability in any case in which prison officials had intentionally filed false and unfounded charges. *See* J.App. 13 (citing *Freeman*, 826 F.2d at 195 (Oakes, *J.*, dissenting from the denial of rehearing in banc)). Chief Judge Curtin therefore

---

1. In so holding, Chief Judge Curtin relied on *Davidson v. Capuano*, 792 F.2d 275 (2d Cir. 1986), in which we held that an Article 78 proceeding under New York law does not preclude a later action for damages under section 1983. *See id.* at 277–82. The district court's ruling on this matter is not challenged on appeal.

2. Chief Judge Curtin granted summary judgment as to defendant Moscicki, the hearing officer, on another, independent ground as well. The district court held that Moscicki, a quasi-ju-

dicial official, was entitled to qualified immunity as long as the hearing at which he presided comported with minimum procedural due process requirements. *See* J.App. 11 (citing *Cleavinger v. Saxner*, 474 U.S. 193, 206–07, 106 S.Ct. 496, 503–04, 88 L.Ed.2d 507 (1985)). This holding is not challenged on appeal. Therefore, Higley and Kelly are the only remaining defendants who are affected by our disposition of this appeal.

granted Franco permission to proceed *in forma pauperis* with an appeal of "the substantial and troublesome questions raised in this case." *Id.* at 14. This appeal followed.

## DISCUSSION

■ We must decide if Chief Judge Curtin was correct in concluding that the parties' pleadings and submissions presented no genuine issues of material fact and that the prison officials were entitled to judgment as a matter of law. Normally, a party faced with a motion for summary judgment, as Franco was here, may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed. R.Civ.P. 56(e). Here, Franco did not present any additional facts through affidavits after the defendants moved for summary judgment. However, he did append two exhibits to his sworn *pro se* complaint—a copy of a letter that he wrote to the Inspector General's office and a copy of another letter that he sent to Superintendent Kelly. We believe that those submissions, along with the sworn complaint itself, were sufficient to create a factual dispute when compared with the denials and averments contained in the defendants' pleadings and affidavits. *Cf. Pfeil v. Rogers,* 757 F.2d 850, 859 & n. 15 (7th Cir.1985) (noting that documents sworn under penalty of perjury may suffice for summary judgment purposes even if they do not meet all of the formal requirements of a notarized affidavit), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); 28 U.S.C. § 1746 (1982). Thus, in considering this appeal, we will view all contested allegations in the light most favorable to Franco. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356–57, 89 L.Ed. 2d 538 (1986); *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 7 (2d Cir.1983). We must now consider whether Chief Judge Curtin was correct in concluding that the defendants were entitled to judg-

ment as a matter of law under our decision in *Freeman v. Rideout.*

In *Freeman,* a state prison inmate claimed that he had been falsely charged with assaulting another prisoner and had been subjected to thirty days of "segregation" on the basis of that false charge. *See* 808 F.2d at 950. The prisoner, Freeman, initiated a section 1983 action in the district court, seeking compensatory damages for the deprivation of his liberty interest without due process. *See id.* at 949–51. Following a trial, the district court entered judgment for Freeman, awarding monetary damages. *Id.* at 950. We reversed. We held that "prison inmate[s] ha[ve] no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Id.* at 951. Rather, we held that the Constitution merely guarantees that prison inmates will "not . . . be deprived of a protected liberty interest without due process of law." *Id.* As long as prison officials grant the inmate a hearing and an opportunity to be heard, the "filing of unfounded charges d[oes] not give rise to a *per se* constitutional violation actionable under section 1983." *Id.* at 953.

■ Thus, the key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment. In establishing a three part test to govern this inquiry, we relied in *Freeman* on the Supreme Court's decision in *Wolff v. McDonnell.* We held that:

> An inmate charged with a violation must be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's action.

*Freeman,* 808 F.2d at 953 (citing *Wolff,* 418 U.S. at 564–66, 94 S.Ct. at 2978–80). Moreover, we noted that "[o]nce a court has decided that the procedural due process requirements have been met, its function is to determine whether there is *some* evidence which supports the decision of the prison disciplinary board." *Id.* at 954–55 (citing *Superintendent v. Hill,* 472 U.S. at 453–55, 105 S.Ct. at 2773–75) (emphasis added). Essentially, a court should not overturn a prison disciplinary board's finding of guilt if there is *any* evidence to support the board's conclusion. *See Hill,* 472 U.S. at 455–56, 105 S.Ct. at 2773–74; *Freeman,* 808 F.2d at 955.

We subsequently denied Freeman's petition for rehearing and suggestion for rehearing *in banc.* Three members of the Court dissented from that denial of rehearing, arguing in part that the mere filing of false disciplinary charges could itself implicate *substantive* due process concerns sufficiently that no measure of procedural protections could immunize prison officials from liability. *See* 826 F.2d at 195 (Oakes, J., dissenting from the denial of rehearing in banc); *id.* at 195–96 (Newman, J., dissenting from the denial of rehearing in banc). The majority of the Court, however, apparently was unswayed by the dissenters' arguments. Therefore, there is support for Chief Judge Curtin's broad reading of our holding in *Freeman* when he held that:

> [U]nder the prevailing law, since plaintiff's disciplinary hearing met the requirements of procedural due process, defendant Higley's filing of allegedly unfounded charges against plaintiff, resulting in plaintiff's segregation in keeplock for 30 days, could not give rise to a *per se* constitutional violation actionable under section 1983.

J.App. 14 (citing *Freeman,* 808 F.2d at 953).

We believe, however, that our holding in *Freeman* must be read in conjunction with our subsequent decision in *Morello v. James,* 810 F.2d 344 (2d Cir.1987). In *Morello,* a prison inmate alleged in a *pro se* complaint that state prison officials had intentionally confiscated a legal brief that he had been preparing for an appeal and some accompanying legal research materials. *See id.* at 345–46. The inmate, Morello, initiated a section 1983 action in federal court, seeking compensatory and punitive damages. *Id.* at 345. The district court dismissed the complaint for failure to state a claim upon which relief could be granted, pursuant to Fed.R.Civ.P. 12(b)(6). *See Morello,* 810 F.2d at 346. In so doing, the district court relied on our decision in *Love v. Coughlin,* 714 F.2d 207 (2d Cir.1983) (per curiam), which in turn relied on the Supreme Court's decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In *Love,* relying on *Parratt,* we held that when a prison inmate alleges a mere deprivation of personal property, "no civil rights action lies *if* the state provides an adequate compensatory remedy." *Love,* 714 F.2d at 208–09 (citing *Parratt,* 451 U.S. at 542–43). As we noted in *Morello, Parratt* continues, even after *Daniels v. Williams,* to stand for the proposition that "section 1983 [can]not be made a vehicle for transforming mere civil tort injuries into constitutional injuries." 810 F.2d at 347.

In *Morello,* however, we reversed the dismissal of the inmate's section 1983 complaint, holding that the district court had improperly relied on *Parratt* and *Love.* We noted that Morello's allegation that prison officials had intentionally stolen his legal papers "describe[d] an unconstitutional denial of Morello's access to the courts." *Id.* at 346. *See Bounds v. Smith,* 430 U.S. 817, 821–23, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986). Although we agreed that the mere deprivation of personal property would not rise to the level of a constitutional injury under *Parratt,* we held that "intentional obstruction of a prisoner's access to the courts is precisely the sort of oppression that the Fourteenth Amendment and section 1983 are intended to remedy." *Morello,* 810 F.2d at 347. Moreover, we held that "[t]he right of access to the courts is substantive rather

than procedural.... [It] cannot be obstructed, regardless of the procedural means applied." *Id.* at 346–47 (citations omitted). *See also Daniels,* 474 U.S. at 338, 106 S.Ct. at 678 (Stevens, *J.,* concurring in the judgment) (noting that if a state infringes on a substantive constitutional right, the mere presence of procedural protections or state law remedies cannot defeat a claim under section 1983); *Parratt,* 451 U.S. at 545, 101 S.Ct. at 1917–18 (Blackmun, *J.,* concurring) ("[T]here are certain governmental actions that, even if undertaken with a full panoply of procedural protections, are in and of themselves, antithetical to fundamental notions of due process."); *Hall v. Sutton,* 755 F.2d 786, 787–88 (11th Cir.1985). We therefore remanded the matter to the district court for further proceedings to determine if prison officials had intentionally confiscated Morello's legal papers in violation of his constitutional right of access to the courts.

■ We believe that the instant case is more closely analogous to *Morello* than to *Freeman.* Unlike *Freeman,* the complaint in the instant case is not one that relies solely on the procedural dictates of the Due Process Clause. Rather, like *Morello,* this case involves conduct by prison officials that allegedly infringed on an inmate's substantive constitutional rights. Franco claims that prison officials intentionally filed false disciplinary charges against him in retaliation for his cooperation with a state administrative investigation of alleged incidents of inmate abuse at the prison. Although those allegations do not directly implicate Franco's right of access to the courts or similar judicial forums, we believe that his complaint does implicate his broader right to petition government for redress of grievances, as guaranteed by the First and Fourteenth Amendments. *See Haymes v. Montanye,* 547 F.2d 188, 191 (2d Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977). *See also California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972); *Burton v. Livingston,* 791 F.2d 97, 100–01 (8th Cir.1986).

The Supreme Court has described the right to petition government for redress of grievances as "among the most precious of the liberties safeguarded by the Bill of Rights." *See United Mine Workers v. Illinois State Bar Ass'n,* 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967). Moreover, the right of petition applies with equal force to a person's right to seek redress from all branches of government. *See California Motor Transport,* 404 U.S. at 510, 92 S.Ct. at 611–12; *Haymes,* 547 F.2d at 191. In the prison context, we have held that inmates must be " 'permit[ted] free and uninhibited access ... to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.' " *Id.* (emphasis added) (quoting *Sostre v. McGinnis,* 442 F.2d 178, 200 (2d Cir.1971) (in banc), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972)). Thus, as the Supreme Court has noted, the constitutional right of unfettered access to the courts "is indeed but one aspect of the right [to] petition [government for redress of grievances]." *California Motor Transport,* 404 U.S. at 510, 92 S.Ct. at 611–12. *See also United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 585, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 339 (1971); *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1427 (8th Cir.1986). Like the right of access to the courts, the right to petition is substantive rather than procedural and therefore "cannot be obstructed, regardless of the procedural means applied." *Morello,* 810 F.2d at 347. Moreover, intentional obstruction of a prisoner's right to seek redress of grievances "is precisely the sort of oppression that ... section 1983 [is] intended to remedy." *Id. See also Burton,* 791 F.2d at 100–01; *Haymes,* 547 F.2d at 189–91.

Because of the clear relationship between the right of access to the courts and the right to petition for redress of grievances, we believe that this case must be controlled by our decision in *Morello.* Franco should not be any less entitled to relief under section 1983 because he was addressing his complaints to a state administrative agency rather than to a court of

law. Moreover, the very communications that Franco allegedly directed to state administrative authorities implicated an important constitutional right—namely, the Eighth Amendment right of prison inmates to be free from cruel and unusual punishment.[3] If Franco can prove his allegation that he was subjected to false disciplinary charges and subsequent punishment for his cooperation with the Inspector General's inquiry, he is entitled to relief under section 1983.

■ Although our decision in *Freeman* accords prison officials wide latitude in disciplining inmates as long as minimum constitutional procedures are employed, *see* 808 F.2d at 953–55; *see also Hill,* 472 U.S. at 454–56, 105 S.Ct. at 2773–75, that latitude does not encompass conduct that infringes on an inmate's substantive constitutional rights. " '[A]n act in retaliation for the exercise of a constitutional right is actionable under [s]ection 1983 even if the act, when taken for different reasons, would have been proper.' " *Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir.1987) (quoting *Buise v. Hudkins,* 584 F.2d 223, 229 (7th Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979)). It may not be clear to what extent section 1983 is available to vindicate certain substantive rights arising out of the Due Process Clause. *See Freeman,* 826 F.2d at 194–95 (Oakes, J., dissenting from the denial of rehearing in banc); *id.* at 195–96 (Newman, J., dissenting from the denial of rehearing in banc). *But see Lareau v. Manson,* 651 F.2d 96, 102 (2d Cir.1981) (noting in a section 1983 action that the

substantive rights of pretrial detainees in prison arise out of the Fourteenth Amendment's Due Process Clause); *see generally City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 243–44, 103 S.Ct. 2979, 2982–83, 77 L.Ed.2d 605 (1983). There is no question, however, that an inmate may resort to section 1983 in attempting to vindicate substantive rights arising out of such other provisions as the First Amendment, *see Pell v. Procunier,* 417 U.S. 817, 819, 821–23, 94 S.Ct. 2800, 2802–03, 2803–05, 41 L.Ed.2d 495 (1974); *Cruz v. Beto,* 405 U.S. 319, 321–22, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972) (per curiam), or the Eighth Amendment, *see Whitley v. Albers,* 475 U.S. 312, 317–19, 106 S.Ct. 1078, 1083–84, 89 L.Ed.2d 251 (1986); *Rhodes v. Chapman,* 452 U.S. 337, 340, 344–47, 101 S.Ct. 2392, 2397–2400, 69 L.Ed.2d 59 (1981).

The contested factual allegations that remain in dispute between Franco and the prison officials are undoubtedly material to the resolution of his claim. Therefore, summary judgment at this juncture is inappropriate. *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (noting that the substantive law involved identifies which matters are "material" for the purposes of summary judgment analysis). *See also Corselli v. Coughlin,* 842 F.2d 23, 25–26 (2d Cir.1988). This case must be remanded to the district court for further proceedings to determine if Franco can prove the allegations of his complaint.

CONCLUSION

The judgment of the district court is reversed and the matter is remanded for

---

**3.** On appeal, Franco also argues briefly that he suffered a cognizable injury under the Eighth Amendment when he was punished for complaining to state authorities about excessive physical force inflicted on other inmates. He offers no directly relevant legal authority in support of this theory. Although any inmates who were abused may have suffered such an injury and could seek redress under section 1983, *see, e.g., Whitley v. Albers,* 475 U.S. 312, 317, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986), it is not clear that Franco himself was subjected to cruel and unusual punishment. We need not definitively resolve the viability of this claim at this juncture, but we note that if Franco decides to pursue such a

theory in the district court, he will face a considerable hurdle regarding his standing to raise the Eighth Amendment claim. *Cf. Flittie v. Solem,* 827 F.2d 276, 279–80 (7th Cir.1987). *But cf. DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 312 (2d Cir.) (holding under 42 U.S.C. § 1981 that white plaintiffs not covered by the statute have standing to sue if they allege injuries suffered as a result of efforts to "vindicate" the rights of minorities who are covered by the statute), *modified on other grounds,* 520 F.2d 409 (2d Cir.1975). Moreover, given that Franco may be able to prove an injury under the First Amendment, it may be unnecessary to consider claims arising out of other constitutional provisions. *See Burton,* 791 F.2d at 101 & n. 2.

further proceedings consistent with this opinion.