Nathan BROWN, Plaintiff,

v.

Thomas A. COUGHLIN, III, Commissioner, et al, Defendants.

No. 93–CV–6410L.

United States District Court, W.D. New York.

May 27, 1997.

---

Nathan Brown, Clinton Correctional Facility, Dannemora, NY, Pro Se.

Carlos Rodriguez, Office of New York State Attorney General, Rochester, NY, James L. Gelormini, Office of the New York State Attorney General, Rochester, NY, Mary H. Doyle, New York State Attorney General's Office, Dept. of Law, Rochester, NY, for Thomas A. Coughlin, III, T. Decker, Sgt., C. Knapp, C.O., B. Curren, C.O.

Carlos Rodriguez, Office of New York State Attorney General, Rochester, NY, James L. Gelormini, Office of the New York State Attorney General, Rochester, NY, for A. Basurto, Nurse.

### DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Nathan Brown, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, who is currently an inmate at Clinton Correctional Facility, alleges that on or about July 18, 1993, while he was incarcerated at Southport Correctional Facility, four of the defendants, all of whom were then employed at Southport, took certain actions against him in retaliation for plaintiff having filed lawsuits and administrative complaints regarding his confinement at Southport. Plaintiff alleges that defendants' actions violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

The five defendants, and the positions they held at all relevant times, are: Thomas A. Coughlin, the Commissioner of the New York State Department of Correctional Services ("DOCS"); T. Decker, a DOCS sergeant; C. Knapp and B. Curren, both corrections officers; and A. Basurto, a nurse. Defendants have moved for summary judgment.

## BACKGROUND

Many of the allegations of the complaint consist of conclusory allegations that defendants have violated plaintiff's rights. The complaint does, however, allege the following specific facts. On or about July 18, 1993, Curren and Knapp approached plaintiff's cell and said to him, "We got you on a real bad ticket," and said that when they were done with him, "nigger, you won't want to file any more complaints." Later that same day, Curren and Knapp again approached plaintiff's cell and said, "We got your nigger ass real good." Complaint ¶ 13.

The complaint also alleges that Knapp and Decker " 'conspiratorially fabricated mental health referral form' alleging plaintiff committed acts of lewdness, so as to lable [sic] an unsavoury stigma on plaintiff within the prison and make it appear as though plaintiff was allegedly unbalanced." Complaint ¶ 12. Plaintiff alleges that this stigma has caused him to be subjected to harassment and prevented him from obtaining "meaningful" job assignments. Complaint ¶ 16.

The complaint further alleges that defendant Coughlin "as a matter of policy and practice has with deliberate indifference failed to adequately discipline, train or otherwise [sic] direct correctional officers regarding the rights of prisoners, thereby causing the defendants-officers in this case to engage in the unlawful conduct" alleged by plaintiff. Complaint ¶ 19. Plaintiff alleges that prior to the incidents giving rise to this action, he had written several letters to Coughlin complaining about various matters concerning corrections officers and that Coughlin did nothing in response. Complaint ¶ 21.

Plaintiff contends that these alleged acts and omissions by defendants violated his right "to communicate with the courts an [sic] seek redress without being harmed and retaliated against," and his right to be free from cruel and unusual punishment. Complaint ¶¶ 22, 23. Plaintiff seeks compensatory and punitive damages, and expungement from his files of certain misbehavior reports that were filed by defendants.

## SUMMARY JUDGMENT STANDARD

The standards for deciding a summary judgment motion under Fed.R.Civ.P. 56 are

well established. The rule provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under the rule, the burden is on the moving party to inform the court of the basis for the motion and to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has carried that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, "the non-moving party must come forward with 'specific facts showing that there is *a genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e) (alteration in original)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587, 106 S.Ct. at 1356. However, at the summary judgment stage, when perusing the record to determine whether a rational fact-finder could find for the non-moving party, all reasonable inferences must be drawn in favor of the non-moving party. *See Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

Applying these standards to the case at bar, I find that questions of fact do exist regarding plaintiff's First Amendment claims against defendants Knapp and Curren. There are no genuine issues of material fact concerning his Eighth Amendment claim, or any of his claims against the other three defendants, however, and those claims are dismissed.

## DISCUSSION

■ As stated, plaintiff alleges that on July 18, 1993, Curren and Knapp approached his cell and said to him, "We got you on a real bad ticket," and that when they were done with him, "Nigger you won't want to file any more complaints." It also appears from the record that an inmate named Reese, whose cell was near plaintiff's, stated in connection with plaintiff's disciplinary hearing that "Officer Knapp and Curen [sic] told inmate Brown that they were going to get him on a real bad ticket and that when they were done with him, inmate Brown, and inmate Brown would not to . . . write any more complaints." Plaintiff's Affidavit Ex. A–1. Reese also stated that after "the lights were turned out Officer Knapp and Curen went into inmate Brown's cell and told him, 'we got your niger [sic] ass good now . . .'" *Id.* In a report by a Lieutenant Hancock regarding his investigation of a complaint that plaintiff had sent to Coughlin on July 7, 1993 alleging that Curren had threatened him with a gun, Hancock also states that "Reese locks next to Brown and could possibly see something happening in front of Brown's cell if the conditions were right." Defendants' Motion Ex. J. The fact that the alleged July 18 incident occurred eleven days after plaintiff made the complaint about Curren also supports his allegation that Curren and Knapp were retaliating against him for making that complaint.

■ It is clear that threats directed at an inmate because he has filed administrative or judicial complaints violate the inmate's First Amendment rights and are actionable under § 1983. "A threat of physical harm to a prisoner if he persists in his pursuit of judicial relief is as impermissible as a more direct means of restricting the right of access to the courts. Nor is it necessary that the prisoner succumb entirely or even partially to the threat. It is enough that the threat was intended to impose a limitation upon the prisoner's right of access to the court and was reasonably calculated to have that effect." *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir.1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979).

The fact that Brown had made an administrative complaint, as opposed to filing a lawsuit, is of no consequence. In *Franco v. Kelly*, 854 F.2d 584 (2d Cir.1988), the inmate

plaintiff alleged that prison officials had intentionally filed false disciplinary charges against him in retaliation for his cooperation with a state administrative investigation of alleged incidents of inmate abuse at the prison. The Second Circuit stated that "[a]lthough those allegations do not directly implicate Franco's right of access to the courts or similar judicial forums, we believe that his complaint does implicate his broader right to petition government for redress of grievances, as guaranteed by the First and Fourteenth Amendments." *Id.* at 589. The court further noted that "[i]n the prison context, we have held that inmates must be 'permit[ted] free and uninhibited access … to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.'" *Id.* (quoting *Haymes v. Montanye,* 547 F.2d 188, 191 (2d Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977)) (alteration in original). The court concluded that "intentional obstruction of a prisoner's right to seek redress of grievances 'is precisely the sort of oppression that … section 1983 [is] intended to remedy.'" *Id.* (quoting *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987)).

I also note that Knapp filed a misbehavior report about Brown on July 18, 1993, the same day that he and Curren allegedly threatened Brown. Brown was found guilty of harassment and not guilty of lewd conduct and committing an unhygienic act. He was sentenced to sixty days confinement in the Special Housing Unit. Defendants' Motion Ex. H. In addition, Curren submitted a mental health referral form regarding Brown on July 14, 1993, stating that "inmate Brown has a large and wild imagination. Inmate Brown is continuously submitting 114A's [complaints] that are all highly fabricated." *Id.* Ex. F. While these actions by Knapp and Curren in and of themselves would not amount to a constitutional violation, they do offer some support for plaintiff's allegation that Knapp and Curren sought to retaliate against plaintiff because of his complaints. *See Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989) ("the filing of a disciplinary charge against [an inmate], although otherwise not actionable under section 1983, is actionable under section 1983 if done in retaliation for his having filed a grievance pursuant to established procedures") (footnote omitted).

I am unpersuaded by defendants' claim that they are shielded by qualified immunity for their actions. As the above-cited case law shows, an inmate's right to seek redress of grievances without fear of retaliation is well established, and if plaintiff's allegations against them are true, it cannot be said that their actions did not violate plaintiff's rights or that a reasonable person would not have known of those rights.

I also find, however, that plaintiff has not stated a claim against any of the defendants, including Knapp and Curren, under the Eighth Amendment. None of the actions allegedly taken against plaintiff amounted to cruel and unusual punishment. *See Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *Ricker v. Leapley,* 25 F.3d 1406, 1411 (8th Cir.1994). Knapp's and Curren's alleged threats were not specific about what sort of harm would be done to plaintiff, and were therefore too vague to constitute an Eighth Amendment violation. *Cf. Hudspeth,* 584 F.2d at 1348 (plaintiff may have had an Eighth Amendment claim based on allegation that guard told him he would be shot and killed if he persisted in lawsuit). Moreover, the fact that plaintiff has stated a claim against Knapp and Curren under the First Amendment makes it unnecessary to consider his Eighth Amendment claim against them, since both claims arise out of the same facts. *See Burton v. Livingston,* 791 F.2d 97, 101 n. 2 (8th Cir.1986).

I also find that plaintiff's claims against defendants Basurto, Decker and Coughlin must be dismissed. The only allegations concerning Basurto are that she conspired with Knapp, Curren and Decker to retaliate against plaintiff. That vague allegation simply does not state a cause of action under § 1983. Complaints containing conclusory, vague, and general allegations of a conspiracy to violate constitutional rights must

be dismissed. *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991); *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977).

The record does show that on July 18, 1993, Basurto filed a misbehavior report charging Brown with harassment. The report stated that while she was making her evening rounds, Brown made several lewd comments to her. Defendants' Motion Ex. B. As stated, Curren also filed a misbehavior report in connection with this incident, adding the charges of "intentionally exposing private body parts" and "unhygienic act." *Id.* Brown was found guilty of harassment, but not of the other two charges.

I recognize that filing false disciplinary charges against an inmate may give rise to a claim under § 1983. *Morello,* 810 F.2d at 348. However, there is no evidence in the record to substantiate Brown's allegation that the report filed by Basurto was false. In addition, there is nothing to indicate that she was aware that Brown had filed complaints about any of the guards, or that, even if she was aware, that she would have had any motive to retaliate against Brown. In fact, the misbehavior report that she filed states that she did not know Brown's name, and had to ask Curren the identity of the inmate who had harassed her.

Plaintiff also contends that factual issues exist because the misbehavior reports state that the time of the incident was "approximately 7:25 pm," Defendants' Motion Ex. B, but that a log book from that night does not reflect that any rounds were made at that time. All that the record shows, however, is that at Brown's disciplinary hearing, the hearing officer stated that the log book "does not say anything about any *security* rounds" being made at 7:25. Plaintiff's Affidavit Ex. A–2 (emphasis added). He did state, though, that the log book stated, "7:25 p.m. Nurse on unit with medication . . ." *Id.*

■ The record also reveals no evidence that creates a genuine issue of material fact concerning plaintiff's claims against Decker.

The only evidence relating to Decker shows that on July 14, 1993, he prepared a memorandum to one of his superiors stating (apparently in connection with Brown's complaint that Curren had threatened him with a gun), "Brown may possibly believe the untruths and stories that he dreams up," and that Decker had therefore directed certain officers to write a psychological referral about Brown. Defendants' Motion Ex. D. Curren and Knapp subsequently did submit such referrals. *Id.* Exs. F, G. Decker also signed the misbehavior reports prepared by Basurto and Curren, but that appears to have been no more than a simple ministerial act taken in Decker's capacity as the area supervisor.

As with Basurto, there is no evidence that supports plaintiff's allegation that Decker was motivated by a desire to retaliate against Brown because of Brown's prior complaints. Although I noted with respect to plaintiff's claims against Knapp and Curren that the sequence of events, *combined* with the evidence that they threatened plaintiff, supported his claims against them, the mere fact that a defendant took some action after plaintiff had filed an administrative complaint, standing alone, cannot support a claim against that defendant. Such *post hoc* reasoning would expose to liability any prison official who took any action, no matter how justified, against an inmate who had previously filed complaints against corrections officers. Since there is no evidence whatsoever of retaliatory animus on Decker's part, then, the claims against him must be dismissed. *See Stevens v. St. Louis Univ. Med. Ctr.,* 97 F.3d 268, 272 (8th Cir.1996) (temporal connection between filing of EEOC complaint and plaintiffs firing could not prove that employer's proffered reason for firing was pretext for retaliation); *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 321 (7th Cir.1992) (timing of plaintiffs sexual-harassment complaint, standing alone, did not create genuine issue of fact as to causal connection between plaintiffs filing of complaint and her subsequent termination); *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 501 (3d Cir.) (timing alone will not suffice to prove retaliatory motive), *cert. denied,* 502

U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991); *Reilly v. Metro–North Commuter R.R. Co.,* No. 93 Civ. 7317, 1996 WL 665620 *14 (S.D.N.Y. Nov.15, 1996) (timing of events alone, even if sufficient to meet plaintiff's *prima facie* burden of showing retaliation, could not defeat defendant's summary judgment motion); *Hollek v. Romines,* No. C 97–0852, 1996 WL 532133 *6 (N.D.Cal. Sep.12, 1996) (timing alone was insufficient to support inmate's retaliation claim); *Payne v. Norwest Corp.,* 911 F.Supp. 1299, 1310–11 (D.Mont.1995) (were court to rule that timing of termination following plaintiff's filing of EEOC complaint could defeat defendant's motion for summary judgment, "it would in effect be holding that any employee discharged following the filing of a human rights complaint is immune from summary judgment, regardless of the reasons for the discharge or the existence (or nonexistence) of proof of retaliation").

I also find that the claims against Coughlin must be dismissed. "[I]t is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights ..." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987). "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

Under the law of this Circuit, a plaintiff may establish personal involvement in one of several ways. First, the plaintiff may show the defendant's direct participation in the event. Second, the proof may show that the defendant learned of the wrong and failed to correct it. Third, a supervisor may be liable for creating a policy or custom under which unlawful practices occur, or for allowing such a policy or custom of which he is aware to continue. Finally, a plaintiff may prove that the supervisor acted with "gross negligence" in managing the subordinates personally involved in the unlawful conduct. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986).

Plaintiff has not adduced any evidence showing that Coughlin was personally involved in the alleged violations of plaintiffs rights under any of these approaches. The record shows that plaintiff sent a letter to Coughlin dated July 7, 1993, complaining of Curren's alleged threat against Brown with a pistol. Contrary to plaintiffs assertions that Coughlin was indifferent to plaintiff's complaint, an internal investigation was ordered, and was conducted by a Lieutenant Hancock. After interviewing numerous witnesses, he concluded in a report dated July 20, 1993 that Brown's complaint was a fabrication, and his supervisor, the Deputy Superintendent for Security Services, concurred in that finding. Defendants' Motion Ex. J. On July 28, 1993, Coughlin sent a letter to Brown informing him of the result of the investigation. There is nothing whatsoever in the record to indicate that the investigation was in any way flawed or biased, and even if there were, there is nothing to suggest that Coughlin knew or should have known of that fact. Furthermore, the alleged incident giving rise to the case at bar occurred on July 18, 1993, while the investigation into plaintiff's July 7 complaint was continuing. Thus, the alleged July 18 incident could not logically be attributed to anything that Coughlin did or did not do with regard to Brown's July 7 complaint.

## CONCLUSION

Defendants' motion for summary judgment (Item 42) is granted in part and denied in part. The motion is granted with respect to plaintiff's claims against defendants Coughlin, Decker, and Basurto, and the claims against those defendants are dismissed. The motion is also granted with respect to plaintiff's Eighth Amendment claims against defendants Knapp and Curren, and the Eighth Amendment claims against those two defendants are dismissed. The motion is denied with respect to plaintiff's First Amendment claims against defendants Knapp and Curren.

IT IS SO ORDERED.