**Luis ROSALES, Plaintiff,**

v.

**Thomas A. COUGHLIN, et al., Defendants.**

No. 94–CV–6009L.

United States District Court, W.D. New York.

June 11, 1998.

Luis Rosales, Elmira, NY, pro se.

James L. Gelormini, Mary H. Doyle, New York State Attorney General's Office, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Luis Rosales, appearing *pro se,* commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff, who is an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that defendants, who include various DOCS employees and officials, deliberately failed to provide plaintiff with adequate medical care for back and leg problems stemming from a work-related accident in 1986, prior to plaintiff's incarceration. Plaintiff alleges that defendants have violated his rights under the Eighth Amendment to the United States Constitution. Both sides have moved for summary judgment.

## FACTUAL BACKGROUND

There is no dispute that plaintiff was injured in 1986, and that at the time that he entered DOCS' custody in 1991, he had some ongoing problems with his back and his left leg. The complaint contains some fifteen pages of factual allegations concerning defendants' actions, but in general plaintiff alleges that he frequently complained about back pain and other medical problems, and that defendants either did nothing or provided him with inadequate care and treatment.

Defendants, and their alleged roles in connection with this action, are as follows. Thomas A. Coughlin was the Commissioner of DOCS at the time of the relevant events. Defendants Lee, Shah, and MGee [sic] are all physicians who were employed at correctional facilities where plaintiff was housed. Defendant John Mitchell was at the relevant times a nurse administrator at Clinton Correctional Facility, and plaintiff has also named as a defendant a nurse administrator at Southport Correctional Facility, who, according to defendants, is B.J. Obremski. Defendant Robert Greifinger was the Chief Medical Officer of DOCS. Defendants Jimmie Harris and Joan Rosado were both DOCS Regional Health Services Administrators. Defendants Kelly and Donnelly were respectively the Superintendent and the Deputy Superintendent of Security at Attica Correctional Facility while plaintiff was incarcerated there. Defendants Sticktch and Monin were sergeants at Attica, and defendant Witowski was a corrections officer there.

The gist of plaintiff's allegations is that the medical treatment he received was inadequate, that he complained about these matters to DOCS officials, and that nothing was done in response. Plaintiff admits that he was seen by physicians and other medical personnel on many occasions, but he claims that their treatment was not sufficient. About the only allegations that do not fall within this broad characterization are plaintiff's claims that on several occasions Witowski seized from him a cane that had been prescribed by a physician. Plaintiff alleges that on October 30, 1993, Witowski took plaintiff's cane and refused to return it. Plaintiff alleges that on November 3, 1993, while attempting to walk to the shower without his cane, he collapsed, suffering a concussion and severe back pain as a result.

In a supplemental complaint filed on May 27, 1994, plaintiff also alleges that in late 1993 he complained to Kelly about Witowski's continued harassment of him and that Kelly did nothing in response. He also alleges that on January 27, 1994, Witowski again took his cane. Plaintiff alleges that he complained to defendants Monin, Kelly, and Coughlin, but none of them made any serious effort to investigate the matter.

In response, defendants contend that the treatment plaintiff has received while in DOCS' custody has been fully adequate and that plaintiff's allegations amount to nothing more than a difference of opinion between him and his health care providers about the nature and extent of the treatment that he requires. Defendants also contend that they are all entitled to qualified immunity because none of their alleged actions or inactions violated any of plaintiff's clearly established rights.

## DISCUSSION

### I. General Standards

■ To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). As the Supreme Court explained in *Wilson v. Seiter,* 501 U.S. 294, 298–99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), this standard includes both an objective and a subjective component. With respect to the objective component, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective component, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights. *Id.* To establish deliberate indifference, therefore, plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain. *See Wilson,* 501 U.S. at 299, 111 S.Ct. 2321; *DesRosiers v. Moran,* 949 F.2d 15, 19 (1st Cir.1991); *Steading v. Thompson,* 941 F.2d 498, 500 (7th Cir.1991), *cert. denied,* 502 U.S. 1108, 112 S.Ct. 1206, 117 L.Ed.2d 445 (1992); *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828, 121 L.Ed.2d 698 (1992).

The Court in *Estelle,* however, also cautioned that mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106, 97 S.Ct. 285. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind" or "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Id.* at 102, 105–06, 97 S.Ct. 285.

■ It is clear, then, that allegations of malpractice do not state a constitutional claim. *Estelle,* 429 U.S. at 106 and n. 14, 97 S.Ct. 285; *Chance,* 143 F.3d at 703–04; *Ross,* 784 F.Supp. at 44. Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance,* 143 F.3d at 703; *see also Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977) ("The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion"); *Massey v. Hutto,* 545 F.2d 45, 46 (8th Cir. 1976) (affirming dismissal of inmate's Eighth Amendment claim where evidence showed that "[t]o the extent that [the plaintiff] is not receiving the treatment he desires, his complaint reflects a mere disagreement over proper medical care"); *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864 (2d Cir. 1970) (affirming dismissal of an inmate's complaint alleging Eighth Amendment violations, because entire basis of his claim was his disagreement with the prison doctor's professional judgment).

■ Prison officials also have broad discretion in determining the type and extent of medical treatment given to inmates. *Thomas v. Pate,* 493 F.2d 151, 157 (7th Cir.1974), *cert. denied,* 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975). Moreover, courts have repeatedly held that a prisoner does not have an absolute right to the treatment of his choice. *See Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986); *see also Jackson v. Fair,* 846 F.2d 811, 817–18 (1st Cir.1988) (no claim of deliberate indifference to serious medical needs when prisoner was transferred from high-security psychiatric hospital to general prison population of another institution, because treatment at new facility was adequate and prisoner did not have right to treatment of his choice).

Nor can the same standards of medical care be imposed upon a prison as those expected of a hospital. In *Dean,* the Second Circuit stated that a "correctional facility is not a health spa, but a prison in which convicted felons are incarcerated." 804 F.2d at

215; *see also Ruiz v. Estelle*, 679 F.2d 1115, 1149 (5th Cir.) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves"), *vacated in part as moot*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

## II. Plaintiff's Claims

█ Applying these standards to the case at bar, it is clear that plaintiff's claims against defendants Lee, Shah, MGee, Mitchell, and the nurse administrator at Southport (collectively "the medical defendants") must be dismissed. Even accepting the allegations of the complaint as true, all that plaintiff can show with respect to these defendants is that he disagreed with them concerning the medical care plaintiff needed.

Plaintiff's own allegations show that he received extensive care and treatment. For instance, he states that in April 1991, shortly after he entered into custody, he was seen by an orthopedic specialist at Elmira Correctional Facility. Complaint ¶ 21. The specialist determined that plaintiff did not need a back brace. Complaint Ex. D–1. Plaintiff disagreed with that conclusion.

In August 1992, after he had been transferred to Clinton, plaintiff was seen by defendant Dr. Lee. Dr. Lee allegedly told plaintiff that plaintiff did not need a back brace that plaintiff had requested. Complaint ¶ 24. In September 1992, plaintiff was provided with a rib supporter. He insisted that he needed a back brace instead, but defendants did not provide him one. Complaint ¶ 26.

Defendant Mitchell told plaintiff in September 1992 that plaintiff would be put on a waiting list for examination by an orthopedic specialist at Helen Hayes Hospital. Complaint ¶ 25. In November 1992, plaintiff was temporarily transferred to Downstate Correctional Facility so that he could be taken to Helen Hayes Hospital. Complaint ¶ 28. Plaintiff was dissatisfied with his treatment, however, because he was only examined with respect to his knee problems and not his back pain. Apparently the reason for this was that the person at Clinton who arranged for this examination had determined that

plaintiff's back problems had been adequately addressed at Clinton. Complaint Ex. N.

In November 1992, prior to his transfer to Downstate, a physician at Clinton examined plaintiff after plaintiff complained of back pain. The physician provided plaintiff with a cane. Complaint ¶ 27. Although Witowski allegedly later seized this cane, none of the medical defendants were involved in that episode.

Plaintiff's other allegations with respect to the medical defendants are in the same vein, and will not be repeated here. What these allegations show, however, is that plaintiff was provided with medical care to address his back and leg problems. He merely disagrees with defendants' conclusions about the type and amount of treatment that his condition warranted. As the preceding discussion of the legal standards in this area makes clear, that is not enough to state an Eighth Amendment claim. Plaintiff makes the conclusory allegation that the medical defendants were indifferent to his medical needs, but his factual allegations belie that assertion. The fact is that plaintiff was treated, and this court will not second-guess physicians' professional opinions about plaintiff's needs based solely on plaintiff's unsubstantiated claims. *See Ross*, 784 F.Supp. at 46 ("[c]ourts will not attempt to second-guess licensed physicians as to the propriety of a particular course of medical treatment for a given prisoner-patient") (quoting *Thomas*, 493 F.2d at 158).

█ Plaintiff's claims against defendants Coughlin, Greifinger, Harris, Rosado, Kelly and Donnelly must also be dismissed. The record does not show any factual issues about whether these defendants violated plaintiff's rights.

In short, plaintiff's claims against these defendants are that he complained to them about various matters, generally the perceived inadequacy of his treatment or acts or harassment by defendant Witowski, and that they did little or nothing in response. The record directly contradicts those allegations, however.

For example, plaintiff alleges that on March 28, 1993, he complained to defendants Greifinger and Coughlin that he was not receiving adequate medical care, and that they did nothing in response. The record shows, however, that plaintiff's letter to Greifinger was referred to Jimmie Harris, the DOCS Regional Health Services Administrator. Harris responded to plaintiff in a letter dated May 10, 1993. Harris stated that he had contacted the health care staff at Clinton, who informed him that plaintiff had been scheduled to be admitted to a hospital for surgery on February 2, 1993, but that plaintiff had refused to go. Harris stated that "[a]rrangements are in the works to have you re-evaluated for another possible admission." Complaint Ex. P. He also stated that he had been informed that a physician had ordered certain tests with respect to plaintiff's back pain, and that "[d]epending on the results of those tests, you will be referred to a local back specialist." *Id.*

Coughlin also responded to plaintiff's letter. In a letter to plaintiff dated May 17, 1993, Coughlin stated that he had "been informed that Helen Hayes Hospital is arranging a clinic visit or a new surgery date," that "[o]n May 3, 1993, you were seen for your back complaint and tests, including an MRI, were ordered," and that plaintiff would be informed of the results. Complaint Ex. Q.

In a letter dated July 30, 1993, and addressed to Southport Superintendent McCallen, plaintiff stated that while he was in Clinton, his cane had been confiscated and never returned to him. He asked McCallen to look into the matter and to ensure that plaintiff received adequate care. Copies of the letter were sent to Coughlin and Greifinger. In a letter dated August 26, 1993, Coughlin stated that the DOCS Division of Health Services had investigated the matter and found that plaintiff had been seen by Dr. Shah on August 16, that plaintiff had been given instructions in back exercises to relieve his discomfort, and that approval for a cane had been "submitted to security for their appropriate action." Complaint Ex. DD.

Defendant Rosado responded to the letter sent to Greifinger on September 21, 1993. Rosado stated that the Division of Health Services had investigated plaintiff's complaint, that Rosado had learned that plaintiff had since been transferred to Attica, and that plaintiff should address any further concerns to the health staff at Attica. Complaint Ex. EE.

In addition, in a memorandum to plaintiff dated August 9, 1993, Southport First Deputy Superintendent M.L. Hollins informed plaintiff that Hollins had reviewed plaintiff's misbehavior report for an incident on May 17, 1993. That report, which apparently had been the basis for the confiscation of plaintiff's cane, stated that plaintiff had been seen by a corrections officer assaulting another inmate with a six-inch-long weapon, which, after several orders from one of the officers on the scene, plaintiff handed to an officer. Hollins stated that it did not appear that the weapon was a cane, and that therefore "the Facility Medical Director is to determine if the indicated cane should remain in your cell possession for *medical* reasons. If so, and it is available in your property, it will be returned to you." He added that "[i]f the cane brought from Clinton is no longer available and a cane is required for legitimate medical reasons, a suitable substitute will be obtained for you." Complaint Ex. FF.

Plaintiff further alleges that during October and November 1993, defendant Witowski verbally harassed him and several times took plaintiff's cane away from him. He alleges that he informed defendants Kelly, Donnelly and Coughlin, but that they did nothing in response. The record, however, shows that in a letter dated November 29, 1993, Coughlin informed plaintiff that Kelly had investigated plaintiff's complaints and was told by Dr. O'Connell, the Director of Facility Health Services, that there was no documented medical need for plaintiff to possess the cane. Kelly also found that at a later date, when plaintiff alleges he collapsed, plaintiff was promptly seen by medical staff and was allowed to use a cane. Kelly also reported that, contrary to plaintiff's claim that the water in his cell had been turned off, the plumbing was in good working order. Kelly concluded that the evidence did not support plaintiff's claim of harassment. Complaint Ex. OO.

In his supplemental complaint, plaintiff makes similar allegations. He alleges that in late 1993 and early 1994, he complained to Kelly and Coughlin about Witowski's alleged continued harassment, but that they did not respond to his complaints. In a letter dated February 24, 1994, however, Coughlin informed plaintiff that Kelly had investigated his allegations and found no evidence to support plaintiff's claims. Kelly also found that plaintiff had "passed the cane to another inmate," but that "a cane was personally delivered to [plaintiff] on February 2, 1994" by a corrections officer. Supplemental Complaint ("Supp.Comp.") Ex. H.

■ "[I]t is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights . . ." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987). In this Circuit, personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

Under the law of this Circuit, a plaintiff may establish personal involvement in one of several ways. First, the plaintiff may show the defendant's direct participation in the event. Second, the proof may show that the defendant learned of the wrong and failed to correct it. Third, a supervisor may be liable for creating a policy or custom under which unlawful practices occur, or for allowing such a policy or custom of which he is aware to continue. Finally, a plaintiff may prove that the supervisor acted with "gross negligence" in managing the subordinates personally involved in the unlawful conduct. *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

Plaintiff has not adduced evidence that creates a triable issue of fact as to these defendants' personal involvement in the events at issue under any of these approaches. At most, the evidence shows that when plaintiff complained to these defendants, they took appropriate, reasonable steps to investigate his complaints and remedy any problems that they found. As the preceding examples demonstrate, the record refutes plaintiff's allegations that these defendants failed to investigate his complaints. There is no evidence that defendants' investigations were in any way flawed or biased, or that they would have had any reason to doubt the accuracy of the conclusions in any of those investigations. The complaint must therefore be dismissed as to these defendants. *See Sprau v. Coughlin,* 997 F.Supp. 390, 393–94 (W.D.N.Y.1998) (no basis for liability where there was no evidence that defendants' investigations were flawed); *Brown v. Coughlin,* 965 F.Supp. 401, 407 (W.D.N.Y. 1997) (same).

■ As to the remaining defendants—Sticktch, Monin and Witowski—I find that genuine issues of material fact exist that preclude summary judgment. Plaintiff's allegations, if true, might support a finding that Witowski was deliberately indifferent to plaintiff's serious medical needs, and that Sticktch and Monin knew of Witowski's actions but deliberately refused to intervene.

Plaintiff alleges that in October 1993, Witowski verbally harassed him, turned his cell water off, and took plaintiff's cane by reaching in through plaintiff's cell bars while plaintiff was lying down. He alleges that he complained about this to Sergeant Monin and that Monin simply laughed. Complaint ¶ 48.

Plaintiff also alleges that on October 30, 1993, Witowski again took plaintiff's cane, stating that the medical department had ordered him to. Plaintiff alleges that on October 31, plaintiff told Sergeant Sticktch what had happened, and also told him that plaintiff's cell water had been turned off since October 20. He also alleges that he showed Sticktch Coughlin's August 26, 1993 letter to plaintiff stating that "[a]pproval for a cane was submitted to security for their appropriate action." Complaint ¶ 51, Ex. DD. Sticktch allegedly did nothing about the cane or the water.

Plaintiff further alleges that on November 2, 1993, he asked Witowski to have someone assist him in walking because it was painful for plaintiff to walk without his cane. He

alleges that Witowski replied that "if plaintiff couln't [sic] come to the front of the gallery for sick-call he was dead." Complaint ¶ 52. He alleges that on the following day, November 3, plaintiff collapsed as he was walking to the shower. Witowski, who witnessed this, allegedly laughed and applauded. Complaint ¶ 53. Plaintiff had to be taken to the infirmary on a stretcher. He alleges that he suffered a concussion, swelling, bruises, headaches and severe pain as a result of this occurrence.

Plaintiff was discharged from the infirmary with a cane on November 4. He alleges that on January 27, 1994, Witowski again reached into plaintiff's cell and took his cane, and made several threatening remarks. Supp. Comp. ¶ 9. The next day, plaintiff told Monin about this incident, but Monin's response was that he was "tired of [plaintiff's] continues [sic] complaint about his officer, If [plaintiff] do[es]nt leave him or his officers' alone he will assure his officers' beat [plaintiff] up while he watch and, that [plaintiff] better watch [his] meals." Supp. Comp. Ex. C.

Plaintiff has also submitted some evidence in support of these allegations, in the form of statements by other inmates who allegedly witnessed some of these events. Plaintiff has submitted an affidavit of one Manuel Diaz, an inmate at Attica. Diaz states that on one occasion, he saw Witowski direct plaintiff to walk alone to a certain area. Because of his medical condition, plaintiff had to walk slowly, and Witowski allegedly told plaintiff that "he was dead for taking his time." Complaint Ex. JJ at 1. Diaz also states that he saw plaintiff walking, "holding himself [up] with the bars to make it all the way to 34 cell" because Witowski "had taken his cane ..." Id. Diaz states that Witowski said that he was authorized to take plaintiff's cane, and was "just laughing like it was a joke." Id. at 2. Diaz further states that on October 31, 1993, he saw defendant Sticktch walk past plaintiff's cell, at which time plaintiff told him that Witowski had wrongfully taken his cane, and that Sticktch refused to look into the matter.

Diaz also states that on November 1, 1993, plaintiff was unable to get out of his bed to take a shower. On November 2, plaintiff asked to go on sick call, but again could not get out of bed. Diaz states, "since he could not get up from bed we all yell for the nurse to come up, but C.O. Watowski [sic] yell down for Luis Rosales to close he [sic] gate that he was dead on sick-call." Id.

Diaz also states that he witnessed the incident in which plaintiff collapsed. He states that when it was plaintiff's turn to take a shower,

> he force himself out of bed he had stated the day before that his legs felt numb and his back hurt all the way up to his neck when he was between cell 32 and 31 he fell down and hit his head with the bars of my cell 31 ... at this time we started yelling down for help, when I put my mirror I could see C.O. Watowski laughing but would not come up to help him, it took about five minutes for some one to come up, about half hour later they took him to the hospitol [sic] ...

*Id.*

Plaintiff has also submitted an affidavit from another Attica inmate, Frank Ellis. Ellis states that on October 20, 1993, he saw Witowski take plaintiff's cane away as plaintiff was going to the yard for recreation. Ellis states that when plaintiff returned from the yard, "he was in a lot of pain. Officer Witowski was up front watching & making obscene remarks towards prisoner Rosales." Complaint Ex. KK at 1.

Like Diaz, Ellis states that on November 1, 1993, plaintiff was unable to get out of bed to take a shower. On November 2, plaintiff put his name down for sick call, but "when prisoner Rosales did not come out of his cell when Officer Witowski opened it, he was told to close his cell door and that he was dead on sick call." Id. at 2. The following day, as plaintiff was walking toward the shower, "he was in a lot of pain. When he reached 31 cell he collapsed and hit his head on the cell bars & he blacked out for about two or three seconds." Id.

With his supplemental complaint, plaintiff

has also submitted an unsworn statement[1] by Ellis. He states that on January 27, 1994, he heard Witowski curse at plaintiff, who was in the cell next to Ellis's. Later that day, he heard plaintiff ask Witowski why Witowski was taking his cane. Ellis states that he then went to the front of his cell and put his mirror through the bars, and saw Witowski "walking and laughing with the cane." Supp. Comp. Ex. B. Ellis also states that the following morning, he heard plaintiff tell defendant Monin that Witowski had taken his cane, and Monin responded "in a very low tone of voice." *Id.*

To make out an Eighth Amendment claim, plaintiff must show that he has "serious medical needs" and that defendants were deliberately indifferent to those needs. *Estelle,* 429 U.S. at 106, 97 S.Ct. 285. In determining whether a plaintiff has a serious medical need or condition, courts have considered a variety of factors, including "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992)). Taking those factors into account here, I find that plaintiff has at least raised issues of fact in this regard.

Although defendants deny that plaintiff's condition is as severe as he claims, it bears repeating that on this motion for summary judgment, the court must view the record in the light most favorable to the plaintiff, and draw all inferences in his favor. Plaintiff alleges that without a cane, he is sometimes in such severe pain that he cannot get out of bed, and that on one occasion, he fell because he did not have his cane. He alleges that he struck his head when he fell, and experienced excruciating pain. Accepting those allegations as true, a factfinder could conclude that plaintiff's condition significantly affects his daily activities, and that he suffers chronic and substantial pain.

I also find that there are issues of fact as to whether these three defendants were deliberately indifferent to plaintiff's serious medical needs. To demonstrate deliberate indifference, plaintiff must show that defendants acted with a sufficiently culpable state of mind. *Wilson,* 501 U.S. at 298–99, 111 S.Ct. 2321. To put it another way, plaintiff must show that defendants acted "wantonly." *Branham v. Meachum,* 77 F.3d 626, 630 (2d Cir.1996); *Sprau,* 997 F.Supp. at 394.

Courts in similar cases have held that a deliberate interference with medical treatment, such as seizing a prescribed cane or other medical equipment, can give rise to an Eighth Amendment violation under these standards. For example, in *Covington v. Westchester County Jail,* No. 96 Civ. 7551, 1997 WL 580697 (S.D.N.Y. Sept.18, 1997), the inmate plaintiff alleged that he fell inside a jail, and that when he fell he felt tremendous pain in his ankle and heard it snap. One of the defendant corrections officers refused the plaintiff's request to he see a doctor immediately, and would only agree to let other inmates carry the plaintiff to the jail clinic, which had no doctor. A nurse applied an ice pack, wrapped the plaintiff's ankle with an elastic bandage, and prescribed aspirin. She also denied the plaintiff's request to see a doctor or have an x-ray examination.

During the two weeks following the plaintiff's injury, two other corrections officers required him to work in the jail law library. During that time, the plaintiff had neither crutches nor a cane. After repeated requests for two months to see a doctor, the plaintiff was at last treated by a physician, who prescribed crutches. The plaintiff was later diagnosed as having a fractured ankle.

The plaintiff sued, claiming a violation of his Eighth Amendment rights. Three weeks after the suit was filed, a corrections officer confiscated his crutches. A few days later, a physician prescribed a cane, but a corrections officer seized it the same day.

The defendants moved to dismiss the complaint for failure to state a claim. The district court denied the motion, stating that, based on the plaintiff's allegations, the defen-

---

1. The statement states, "Notary is not available so I declare under the penalty of perjury that the fore going is true and correct." Supp. Comp. Ex. B.

dants "intentionally interfered with his prescribed medical treatment by confiscating his crutches and cane without cause, thereby subjecting Covington to needless pain and suffering." 1997 WL 580697 *3 (footnote omitted). The court concluded that, "[t]aking these allegations as true, a reasonable trier of fact could conclude that the defendants knowingly disregarded an excessive risk to Covington's health." *Id.*

In *Gleash v. Hardiman,* No. 88 C 5949, 1993 WL 92436 (N.D.Ill. Mar.26, 1993), the plaintiff inmate alleged that just prior to his incarceration, he had been shoved into a cell at a police department precinct, causing him to bang his right knee on an iron bunk bed. This aggravated an existing knee injury, and during his incarceration the pain and swelling in his knee were so severe that he was unable to walk without bracing himself against a wall or furniture.

On the defendants' motion for summary judgment, the district court denied the motion with respect to a defendant who had allegedly interfered with the plaintiff's medical treatment. The court stated that defendant, a corrections officer, allegedly "repeatedly ordered that Gleash's cane and crutches be taken away, thus denying Gleash prescribed medical treatment." 1993 WL 92436 *11. The court noted that "[t]he intentional interference with treatment once prescribed can constitute deliberate indifference." *Id.* at *8 (citing *Brown v. Hughes,* 894 F.2d 1533 (11th Cir.1990)).

In *Jones v. Fairman,* No. 89 C 7586, 1991 WL 148156 (N.D.Ill. July 25, 1991), the inmate plaintiff alleged that he had injured his left ankle while incarcerated, and was given a cane by prison doctors to help him walk. The next day, a defendant corrections officer, without provocation, forcibly took the plaintiff's cane away from him. He then ordered the plaintiff to walk up two flights of stairs without the cane, stating that if the plaintiff refused, the defendant would "beat [his] brains out." 1991 WL 148156 *1.

Denying the defendant's motion for summary judgment, the court stated that the plaintiff's allegation that the defendant "deliberately interfered with his medical treatment by forcibly taking his cane away from

him and forcing him to walk up two flights of metal stairs ... [wa]s sufficient to withstand a motion for summary judgment." *Id.* at *3 (citing *Martinez v. Mancusi,* 443 F.2d 921, 924 (2d Cir.1970) (cruel and unusual punishment where guards forced inmate to walk from hospital after leg surgery contrary to physician's orders), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971)).

Plaintiff has submitted some evidence that Witowski repeatedly took plaintiff's cane from him, thereby interfering with his prescribed course of treatment and causing plaintiff to suffer pain. If this had been a single, isolated occurrence, it might not support an Eighth Amendment claim. *Cf. Funchess v. Doe,* No. 96 C 4767, 1997 WL 12785 (N.D.Ill. Jan.10, 1997) (plaintiff's allegation that unnamed officer confiscated his cane, and that cane was returned when plaintiff displayed prescription for cane, did not allege deprivation of constitutional proportions). Because Witowski allegedly did this on a number of occasions, however, I believe that there are genuine issues of material fact as to whether he acted with sufficient wantonness to have violated plaintiff's rights under the Eighth Amendment.

Plaintiff has also proffered some evidence that Monin and Sticktch had direct knowledge of Witowski's behavior and refused to do anything about it. Although the evidence concerning these two defendants—particularly Sticktch—is thin, defendants have not responded to plaintiff's allegations by affidavit or otherwise. The only evidence submitted by defendants consists of plaintiff's medical records, copies of correspondence, and other documentary evidence. Given plaintiff's allegations that he complained directly to Monin and Sticktch about Witowski's actions, and that they essentially laughed it off or even threatened plaintiff in response, I believe that there are also genuine issues of material fact that preclude summary judgment in favor of these two defendants as well.

I also find that these same issues of material fact preclude summary judgment in plaintiff's favor. Although he has proffered some evidence that his Eighth Amendment rights were violated, the evidence is not so

clear-cut that no rational finder of fact could reasonably find in defendants' favor. Plaintiff's motion for summary judgment is therefore denied as well.

## CONCLUSION

Defendants' motion for summary judgment (Item 75) is granted in part and denied in part. Defendants' motion is granted with respect to plaintiff's claims against defendants Thomas A. Coughlin, Lee, Shah, MGee, John Mitchell, Southport Correctional Facility Nurse Administrator, Robert Greifinger, Jimmie Harris, Joan Rosado, Kelly and Donnelly, and the complaint is dismissed as to those defendants. In all other respects, defendants' motion is denied.

Plaintiff's cross-motion for summary judgment (Item 79) is denied.

IT IS SO ORDERED.