Francisco RAMOS, Plaintiff,

v.

Dr. O'CONNELL, HSD; Walter R. Kelly, Superintendent of Attica Correctional Facility; Sergeant Gavigan; Sergeant D. Coffey; Dawson, Dentist; Nurse Herman; and Nurse F. Allen, Defendant.

No. 95–CV–432C(H).

United States District Court,
W.D. New York.

Sept. 29, 1998.

Francisco Ramos, plaintiff pro se.

Dennis C. Vacco, New York State Attorney General (Kim S. Murphy, Assistant Attorney General, of counsel), Buffalo, New York, for defendant.

DECISION and ORDER

CURTIN, District Judge.

## INTRODUCTION

Plaintiff Francisco Ramos is an inmate in the custody of the New York State Department of Correction Services ("DOCS"). At all times relevant to his claims, plaintiff was incarcerated at the Attica Correctional Facility ("Attica") in Attica, New York. Plaintiff's complaint alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. More specifically, plaintiff claims that defendants, all employees of DOCS, deliberately denied him both routine and emergency medical treatment. He seeks both compensatory and punitive damages under 42 U.S.C. § 1983.

Defendants contend that plaintiff received appropriate medical treatment while jailed at Attica, and that if he was denied supplemental medical treatment, it was by plaintiff's own refusal. Defendants now move for summary judgment according to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, who is a pro se litigant, opposes defendants' motion and has filed his own cross-motion for summary judgment (Item 48).

## BACKGROUND

Central to plaintiff's claim is the DOCS tuberculosis control program, (the "program") which was instituted in 1991 to address an outbreak of tuberculosis ("TB") in prison populations across the State. Under the 1991 program, inmates were tested for latent TB upon entry into the DOCS system and on an annual basis thereafter. Inmates who refused to take a TB test were placed in a form of confinement known as "medical keeplock," also referred to as medical quarantine. Inmates in medical quarantine remained in their cells at all times, and were released only for one 10–minute shower per week and any scheduled legal visits. At Attica, placement in medical quarantine also resulted in inmates' being denied routine medical treatment (Item 42).

Plaintiff refused to be tested for TB upon his entry into the DOCS system and was

therefore placed in medical quarantine in the Special Housing Unit ("SHU"). In December 1994, plaintiff complained of head and stomach pains. After a brief examination, Dr. Ginsburg [1] requested that plaintiff undergo routine blood tests. When Ginsburg's request was denied, plaintiff filed a grievance claiming that his medical needs were being neglected (Item 16, Exh. C). The Inmate Grievance Resolution Committee investigated plaintiff's complaint and found that "as long the inmate is under medical keeplock status for refusing his mandatory TB test he will not be brought out of his cell for routine testing" (Item 16, Exh. D). Based on the committee's findings, defendant Walter Kelly, Superintendent of Attica, denied plaintiff's grievance (Item 49, Exh. 2, "Inmate Grievance Program").

On March 7, 1995, plaintiff complained to defendant D. Herman, a registered nurse at Attica, of a toothache on the left side of his mouth (Item 16, Exh. G). Herman recommended plaintiff for dental treatment (*Id.*). Plaintiff repeated his request to see a dentist to Herman and other nurses at Attica throughout the month of March (*Id.*).

On April 6, 1995, the Ambulatory Health Record ("AHR") reveals that plaintiff was pounding on the bars of his cell "needing dental" treatment (*Id.*). Herman informed plaintiff that he was not eligible for dental treatment due to his medical quarantine status (*Id.*). On April 12, 1995, plaintiff complained again of tooth pain and requested to see a dentist, at which time Herman further explained to plaintiff that "he was being denied dental and medical treatment by defendant Dr. David O'Connell because he had refused to take a TB test, and that plaintiff should write to O'Connell as to the denial" (Item 24, ¶ 13). Instead of personally contacting O'Connell, plaintiff opted to file a grievance against the doctor for denying him dental treatment (Item 16, Exh. D). Defendant Kelly accepted plaintiff's grievance and granted his request to see a dentist (Item 49, Exh. 4, "Inmate Grievance Program"), and a dental appointment was scheduled for May 2, 1995 (*Id.*, "Grievance Investigation").

---

1. Dr. Ginsburg is not a defendant in this action.

On or about April 26, 1995, plaintiff allegedly "overheard defendant Gavigan tell members of the medical staff that he will not allow his officers to bring plaintiff out of his cell due to his quarantine status" (Item 24, ¶ 19). On May 2, 1995, plaintiff was not released for a dental appointment even though the appointment was scheduled by defendant Kelly pursuant to plaintiff's April 1995 grievance. The Dental Treatment Record ("DTR") for that day indicates that plaintiff was not released by security staff due to his "medical quarantine status" (Item 16, Exh. H). On or about June 26, 1995, plaintiff claims he overheard defendant Coffey also tell members of the medical staff that his officers would not release plaintiff for medical appointments (Item 24, ¶ 20).

Over the next few months, plaintiff continued to complain of tooth pain and requested to see a dentist (Item 49, Exh. 5, AHR indicating plaintiff requested to see a dentist on 5/21/95, 7/29/95, and 8/2/95). The AHR on August 2, 1995, indicates that defendant Frances Allen, a registered nurse at Attica, recommended that plaintiff see a dentist "as soon as possible." On August 22, 1995, the AHR indicates that plaintiff again requested to see the dentist, but this time Allen told him that he could not see a dentist until he had taken his TB test. She then asked him if he wanted to take the test, and he refused (Id.).

A recall dental examination was scheduled for September 9, 1995. Plaintiff did not appear for the exam, and no reason was provided by the security staff regarding his absence (Item 49, Exh. 3 DTR). On October 4, 1995, plaintiff again requested to see a dentist and was once again told he could not see the dentist while he was under medical quarantine for not taking the TB test. Nurse Allen again offered plaintiff the test, and again he refused (Item 49, Exh. 5 "AHR"). Two days later, on October 6, 1995, plaintiff's sore tooth abscessed, and he was prescribed an antibiotic for the swelling. On October 10, 1995, defendant William Dawson, a licensed dentist and Director of Dental Services at Attica, examined plaintiff through the plexiglass window of his cell (Item 42). According to Dawson's affidavit and the corresponding DTR, he determined that plaintiff should be brought to the dental clinic for further assessment (Id.).

A second recall dental exam was therefore scheduled for October 17, 1995 (Item 49, Exh. 3). According to the DTR, that appointment was rescheduled to October 19, 1995, by the security staff (Id). On October 19, 1995, plaintiff was not escorted to the dental clinic for his scheduled appointment. The security staff reported that defendant refused the call out and filed a "Refusal of Medical Examination and/or Treatment" form ("refusal form"), which plaintiff allegedly refused to sign (Item 16, Exh. I). As a result of the alleged refusal, security officers Kulik and Martzolf filed an inmate misbehavior report. The report claims that plaintiff continually disobeyed their orders to get dressed for his dental appointment on October 19, 1995 (Item 16, Exh. 7, "Inmate Misbehavior Report"). Plaintiff filed a grievance disputing the misbehavior report, claiming that instead of asking him to get dressed for the dental appointment, Officers Kulik and Martzolf told plaintiff not to come out of his cell to attend the appointment, threatening to beat him if he did (Item 49, Exh. 8).

On October 31, 1995, plaintiff asked again to see a dentist regarding his wisdom tooth. On November 6, 1995, Nurse Allen requested a dental appointment for plaintiff "ASAP" (Item 49). A third call out was then scheduled for November 16, 1998. Again, plaintiff was not escorted to the dental clinic for the appointment. Security staff claimed that plaintiff had refused to leave his cell for treatment and filed a refusal form, which the staff claims plaintiff refused to sign (Item 16, Exh. J). Plaintiff was not scheduled for another dental appointment while an inmate at Attica (Item 42), and he was transferred to the Green Haven Correctional Facility on July 8, 1997.

### DISCUSSION

Subsequent to plaintiff's filing of this action, the Second Circuit held the DOCS's 1991 TB Control Program unconstitutional under the Eighth Amendment. *Jolly v. Coughlin*, 76 F.3d 468 (2d Cir.1996) (prolonged confinement in medical quarantine

without exercise constitutes an Eighth Amendment violation). Several months later in *Williams v. Greifinger,* 97 F.3d 699 (2d Cir.1996), the court reaffirmed its holding in *Jolly,* and also held that qualified immunity was no defense to Eighth Amendment claims based on a deprivation of exercise.

Since the *Jolly* and *Williams* decisions, DOCS has amended the Tuberculosis Control Program. The new program allows inmates who are medically quarantined for refusing to be tested for TB one hour of exercise per day and three showers per week. Although these new amendments address the Second Circuit's rulings in *Jolly* and *Williams,* the DOCS program still fails to specify what type of medical treatment is available to inmates who have refused TB testing. For this reason, it remains necessary to analyze allegations by plaintiff Ramos that he was deliberately denied dental treatment while incarcerated at Attica because he refused to be tested for TB.

## I. General Standards

### A. Summary Judgment

■ This court reads plaintiff's pleadings and amended pleadings with care, granting him greater latitude than it would a litigant represented by professional counsel. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). It is well accepted that a pro se party's supporting papers are read liberally, interpreting them to raise the strongest arguments they suggest. *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

Summary judgment is appropriate where a review of the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The role of the court is not to resolve any disputed facts, but rather to determine whether the record as a whole supports any issues that require a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## B. 42 U.S.C. § 1983

■ Congress enacted 42 U.S.C. § 1983 to create a civil cause of action against any person who, acting pursuant to government authority or under of the color of state law, abridges rights guaranteed by the United States Constitution or by federal law. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). To state a section 1983 claim, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law. *Rodriguez v. Weprin,* 116 F.3d 62, 65 (2d Cir.1997).

Here, plaintiff alleges that defendants deprived him of his right to be free from cruel and unusual punishment, guaranteed to him by the Eighth Amendment of the Constitution, by failing to provide him with appropriate medical treatment.

### 1. Eighth Amendment Claim

■ The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishment" on those convicted of a crime. *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court recognized that the Eighth Amendment applied not only to the sentencing of a convicted criminal, but also to the conditions of his imprisonment. Specifically, the Court held that deliberate indifference by prison officials to an inmate's medical needs can result in a violation of the prisoner's Eighth Amendment rights.

■ In *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) the Court further elaborated that "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Furthermore, to state a cognizable section 1983 for inadequate medical treatment, the state action must be more than mere negligence. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996). Most recently, in *Farmer*

*v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Court consolidated these various standards into one 2–part test containing an objective and subjective element.

#### a. Objective Element

 Objectively, the alleged deprivation must be "sufficiently serious," involving a condition of urgency, one that may produce death, degeneration, or extreme pain. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996). Under this standard, plaintiff's allegation that the denial of a routine blood test violates the Eighth Amendment must fail. However, plaintiff's abscessed wisdom tooth constitutes a sufficiently serious enough medical condition to sustain a claim that he was unconstitutionally denied medical treatment.

Recently, the Second Circuit determined that a cavity which is causing an inmate "great pain" is considered a sufficiently serious medical condition under the Eighth Amendment. *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Other Circuits have also held that a cognizable Eighth Amendment claim can be based on inadequate dental care. For example, both the Fifth and Eighth Circuits found that the deterioration of teeth due to a lack of treatment, or aggravation of a dental problem due to a three-week delay in treatment, constitutes sufficiently serious medical conditions. *Hunt v. Dental Department,* 865 F.2d 198 (9th Cir.1989); *Boyd v. Knox,* 47 F.3d 966 (8th Cir.1995).

According to plaintiff Ramos's complaint and supporting papers, he suffered from the same medical ailments as the plaintiff in *Chance.* In *Chance,* plaintiff was denied appropriate treatment after he requested to see a dentist for a toothache which was causing him "great pain." *Chance,* 143 F.3d at 700. Here, plaintiff Ramos requested to see a dentist for a "rotted out" wisdom tooth causing him "unbearable pain" (Item 24). Like Chance, Ramos claims that the tooth pain was so severe that he was unable to chew food properly, and that the denial of dental treatment caused the infected tooth to abscess (Item 24).

Defendants have failed to submit any affidavits or exhibits to support their contention that plaintiff's condition is not sufficiently serious to warrant an Eighth Amendment claim. In fact, there is nothing in the records that distinguishes plaintiff's allegations from the medical conditions already recognized by case law as sufficiently serious conditions under the Eighth Amendment. Perhaps after further discovery defendants will reveal information which allows such a determination to be made. At present, a generous reading of the record reveals the contrary: that plaintiff Ramos's complaint objectively states a sufficiently serious medical condition under the Eighth Amendment.

#### b. Subjective Element

 Subjectively, a prison official must have acted with deliberate indifference to an inmate's health or safety. *Hathaway,* 99 F.3d at 553. To establish deliberate indifference, an inmate must prove the prison official had the culpable state of mind to wantonly inflict pain on the inmate. *Wilson,* 501 U.S. at 299, 111 S.Ct. 2321. Specifically, plaintiff must show that defendants knew of and disregarded plaintiff's serious medical needs. *Chance* 143 F.3d at 703. Complaints based on negligence are insufficient. *Rosales v. Coughlin,* 10 F.Supp.2d 261 (W.D.N.Y.1998). "Rather, the plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Id.* (quoting *Estelle,* 429 U.S. at 106, 97 S.Ct. 285.)

#### 1. Defendant's Liability

#### a. Superintendent Kelly

 Defendant Kelly was not deliberately indifferent to plaintiff's serious medical needs. In April of 1995, after being told that as long as he refused his TB test defendant O'Connell would not grant his request to see a dentist, plaintiff filed a grievance pursuant to the DOCS Inmate Grievance Program (Item 16, Exh. C). A committee investigated the grievance and reported to Kelly that plaintiff was "scheduled to see the dentist on May 2, 1995" and "that his medical needs are being addressed" (Item 16, Exh. F). For plaintiff to state a viable

Eighth Amendment claim against Kelly, he must provide documentation or other evidence that Kelly intentionally ignored plaintiff's grievance or arbitrarily denied him relief. Plaintiff has offered no such evidence.

The record indicates that Kelly, based on the Grievance Committee's report, accepted plaintiff's grievance and informed him that he was scheduled to see the dentist "soon" (Item 49, Exh. 4). Acceptance of plaintiff's grievance and the scheduling of a dental appointment are evidence that defendant Kelly was not deliberately indifferent to plaintiff's needs. Therefore, Kelly is entitled to summary judgment.

### b. Facility Health Services Director O'Connell

Defendant O'Connell's behavior was not as limited nor as inculpable as defendant Kelly's. The pleadings show that O'Connell is responsible for enforcing the policy denying medically quarantined inmates medical and dental treatment. For example, defendant Dawson names O'Connell as the DOCS official who explains to him that inmates in medical quarantine are only eligible for "emergency medical treatment of a serious nature" (Item 42, Dawson Affidavit).

According to plaintiff's complaint and the AHR, Nurse Herman also named O'Connell as the official who denied plaintiff's request for dental treatment in March and April of 1995 (Items 24, 49). Particularly suspect is the denial of dental treatment on April 6, 1995, after Nurse Herman reported in the AHR that plaintiff was pounding on his cell bars complaining of tooth pain and demanding a dentist (Item 49, Exh. 5). Also questionable is O'Connell's alleged denial of treatment in May of 1995, after defendant Kelly ordered that plaintiff be scheduled for a dental appointment "soon."

Defendants fail to submit affidavits or other evidence to refute the information provided by Dawson, the allegations made by plaintiff, or the listings in the Ambulatory Health and Dental Treatment Records indicating that O'Connell personally denied plaintiff treatment for a medical condition that the Second Circuit considers sufficiently serious to warrant Eighth Amendment protection. Whether O'Connell deliberately denied the treatment remains a triable issue of fact for a jury to consider, and defendant O'Connell's motion for summary judgment is therefore denied.

### c. Sergeants Gavigan and Coffey

As sergeants on the security staff, defendants Gavigan and Coffey oversee the prison guards in the SHU at Attica. Plaintiff alleges that on or about April 24, 1995, after Kelly accepted his grievance, he overheard Gavigan inform unidentified medical staff, he will not allow his officers to bring plaintiff out of his cell for dental appointment due to his "quarantine status" (Item 24 ¶ 19). Plaintiff alleges a similar conversation occurred between members of the medical staff and Coffey on or about June 26, 1995 (Item 24 ¶ 20).

Defendants contend that these allegations have no merit because plaintiff provides no evidence of personal involvement by either Gavigan or Coffey. Specifically, defendants refer to the AHR, which does not specify that plaintiff was scheduled for dental appointments during that time period. However, a more thorough reading of the entire record reveals that defendants are mistaken. Plaintiff was scheduled to see the dentist on May 2, 1995. In fact the DTR for May 2, 1995, indicates that he was not released for the appointment because he was "quarantined for refusing his TB test" and "no routine medical treatment allowed" (Item 49, Exh. 3). There are also three listings after June 26, 1995, which indicate that plaintiff requested to see dentist for "hole in tooth," but was told he cannot see a dentist while quarantined (Item 49, Exh. 5, entries for 7/29/95, 8/2/95 and 8/22/95).

Several other documents submitted by the parties support plaintiff's allegations against Coffey and Gavigan. On September 7, 1995, security officers failed to escort plaintiff to a scheduled dental appointment and provided no explanation as to his absence (Item 42). Security officers also failed to escort plaintiff to an emergency dental appointment scheduled by Defendant Dawson on October 17, 1995, requesting, without explanation, that the appointment be rescheduled to October 19, 1995. On October 19, 1995, security offi-

cers Kulick and Martzholf allege that plaintiff refused to leave his cell for a scheduled dental exam (Item 49, Exh. 7). Plaintiff denies the allegation and claims that the guards threatened to use physical force if he attempted to attend the appointment. A refusal form was thereafter filed, but without plaintiff's signature. The same transaction of events occurred on November 16, 1995, when plaintiff was again scheduled to see the dentist.

It is clear from the above that the record currently contains sufficient information to create a question of fact as to whether Gavigan and Coffey directed security officers to not release plaintiff for medical appointments. Defendants have failed to submit any affidavits or documents which prove otherwise. Perhaps further discovery will reveal information that plaintiff's allegations are meritless, at which time defendants can reapply for summary judgment. However, their current request for summary judgment is therefore denied.

### d. The remaining defendants

■ For whatever reason, a review of the docket sheet reveals that the remaining three defendants, Dawson, Herman, and Allen, were never served. Under Rule 4 of the Federal Rules of Civil Procedure, service must be made within 120 days of the filing of the summons and complaint. Fed.R.Civ.P. 4(m). However, the 120–day period is not absolute and "[a]n indulgent attitude towards pro se plaintiffs suing in forma pauperis, especially when they are incarcerated, has been manifest in a number of cases." Siegel, Commentary to Fed.R.Civ.P. 4. As such, this case is not dismissed based on a procedural technicality.

■ A review of the record indicates that defendants Dawson, Herman, and Allen were only named in the caption of the complaint and amended complaints, but plaintiff does not state any allegations against them within his complaints. As such, plaintiff's claims against these defendants (Dawson, Herman, and Allen) are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

■ Even if Dawson, Herman, and Allen were properly served and named in plaintiff's complaint, plaintiff fails to establish an issue of fact as to their deliberate indifference to his medical needs. As the AHR and DTR indicate, Nurses Herman and Allen continually reported plaintiff's complaints of tooth pain and forwarded his requests for dental treatment to defendant O'Connell. When O'Connell denied plaintiff's requests due to his refusal to take the TB test, both nurses offered him the test, to which he refused. When plaintiff refused to be tested, both nurses continued to treat him with penicillin for the abscessed tooth and Advil for his resulting discomfort.

■ Plaintiff also fails to establish that defendant Dawson was deliberately indifferent to his medical needs. There is nothing in the record which indicates that Dawson denied plaintiff dental treatment or prevented him from attending the scheduled dental appointments. According to his affidavit, Dawson scheduled several dental appointments for plaintiff from January 1995 through May of 1997. In April, after plaintiff failed to appear for his March 28, 1995, appointment, Dawson inquired about his absence and was informed of the medical quarantine policy by O'Connell. Despite O'Connell's explanation of the policy, Dawson continued to schedule plaintiff for dental visits. On October 6, 1995, Dawson promptly responded to Nurse Allen's report that plaintiff's face was swollen by personally going to the SHU to examine him. After examining plaintiff, Dawson determined that plaintiff needed to be treated at the dental clinic, and scheduled him for an appointment.

Since Dawson, Herman, and Allen did everything within their power to treat plaintiff's rotted-out wisdom tooth, they were at no time deliberately indifferent to plaintiff's medical needs. Plaintiff has therefore failed to prove that an issue of fact exists as to defendants Dawson's, Herman's, and Allen's involvement, and summary judgment is therefore appropriate as to them.

### CONCLUSION

For the foregoing reasons, the court grants summary judgment to defendants

Kelly, Dawson, Herman and Allen. The court denies the summary judgment motion as to defendants O'Connell, Gavigan, and Coffey. Plaintiff Ramos's cross-motion for summary judgment is also denied.

The court hereby appoints Thomas V. Hagerty, Esq., Hagerty & Brady, 69 Delaware Avenue, Suite 1010, Buffalo, New York 14202, as counsel for the plaintiff, *pro bono,* pursuant to 28 U.S.C. § 1915(e). *See Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986); *Cooper v. A. Sargenti Co.,* 877 F.2d 170 (2d Cir.1989); *see also* Local Rules of Civil Procedure, Rule 83.1(g). The Clerk of the Court is directed to make available this file for Mr. Hagerty's perusal and shall photocopy the items in the file that Mr. Hagerty desires to be photocopied. The Clerk shall also send a copy of this order and the Guidelines Governing Reimbursement from the District Court Fund of Expenses Incurred by Court Appointed Counsel to Mr. Hagerty. A meeting shall be held with counsel in this case on Tuesday, November 17, 1998, at 3 p.m. to set a discovery schedule.

So ordered.